**FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DEWEY, et al., | : |
| | : |
| | : |
| Plaintiffs, | : Civil Case No. 07-2249 (FSH) |
| | : |
| v. | : **OPINION** |
| | : |
| VOLKSWAGEN AG, et al., | : Date: March 31, 2008 |
| | : |
| | : |
| Defendants. | : |
| | : |

| | |
|---|---|
| DELGUERCIO, et al., | : |
| | : |
| | : |
| Plaintiffs, | : Civil Case No. 07-2361 (FSH) |
| | : |
| v. | : |
| | : |
| VOLKSWAGEN OF AMERICA, et al., | : |
| | : |
| | : |
| Defendants. | : |
| | : |

**HOCHBERG, District Judge**

This matter comes before the Court upon Defendant Volkswagen of America's

("VWoA") Motion to Dismiss the Dewey Plaintiffs' Complaint and Plaintiff Delguercio's

Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (Dewey DKT#24; Delguercio

DKT#16), and Defendants' Motions to Quash Purported Service of Process on Volkswagen AG,

Audi AG, and Volkswagen De Mexico, S.A. de C.V. in both cases (Dewey DKT#29;

Delguercio DKT#18).  The Court has considered the arguments of the parties on the papers

pursuant to Federal Rule of Civil Procedure 78 and will grant Defendant's Motion to Dismiss in part and deny it in part, and will grant Defendant's motion to quash service in part and deny it in part.

## I. BACKGROUND

### A. Procedural Background Relevant to Defendants' Motions to Quash Service

On December 28, 2007, Plaintiff Delguercio delivered to an office of Volkswagen of America ("VWoA") summonses and Complaints directed to Volkswagen AG ("VWAG"), Audi AG ("AAG"), and Volkswagen De Mexico, S.A. de C.V. ("VWDM") (collectively "the foreign Defendants").  Certification of Adam Slater, Esq., dated December 28, 2007, ("Slater Cert."), at ¶¶ 7-9; Defendants' Reply Brief at 1-2.  On October 15, 2007, the Dewey Plaintiffs delivered to CT Corporation ("CT") copies of the summonses and Complaints directed to the foreign Defendants.  Declaration of Samuel P. Sporn, Esq., ("Sporn Dec"), dated Dec. 10, 2007, at Ex. 10.[1]  CT is VWoA's registered agent authorized to receive service on VWoA's behalf. Affirmation of Kenneth Uva ("Uva Aff.") at ¶ 3.  CT did not accept the summons addressed to AAG and VWDM, stating that it lacked the authority to receive service for these entities.  Id. at ¶¶ 6-7.  On October 29, 2007, the Dewey Plaintiffs served CT with a summons and Complaint

---

[1]      Plaintiffs' counsel, Samuel Sporn, Esq., submitted his own declaration that contains facts that may not be within his personal knowledge, in addition to factual and legal arguments.  Mr. Sporn also attached various documents to his declaration. LOCAL CIV. R. 7.2(a) prohibits such declarations from counsel.  Rule 7.2 specifically states that "affidavits are restricted to statements of fact within the personal knowledge of the affiant.  Arguments of the facts and the law shall not be contained in the affidavit." LOCAL CIV. R. 7.2; Danvers Motor Co., Inc. v. Ford Motor Co., Civ. No. 02-2197, 2007 WL 419285, * 5 (D.N.J. Jan. 31, 2007).  Those portions of Mr. Sporn's declaration that include facts not within his personal knowledge and legal and factual arguments shall be stricken.

directed to VWoA "as an agent for Volkswagen AG." Affirmation of Daniel V. Gsovski, Esq.,

("Gsovski Aff.") dated Dec. 14, 2007 at Ex. A. CT forwarded the documents to VWoA. Id.

*B. Facts Relevant to Defendants' Motion to Dismiss*

These Class Actions arise from design defects allegedly present in certain Volkswagen

and Audi automobiles ("Class Vehicles"). Plaintiff Delguercio brings suit individually and on

behalf of a Plaintiff Class defined as those who have since 1997 purchased or leased

Volkswagens, including Passats, Passat Wagons, Jettas, GTIs, Audis, and all other Volkswagen

vehicles that suffer from the allegedly defective parts. See Delguercio First Amended Complaint

and Jury Demand ("Delguercio Compl.") ¶ 1. The Dewey Plaintiffs bring suit on behalf of

themselves and all others who currently own or lease, or have owned or leased, Volkswagens of

model years 1998-2006 or Audis of model years 1997-2006, with the alleged defects. See

Dewey First Amended Class Action Complaint ("Dewey Compl.") ¶ 2.

Plaintiff Delguercio alleges that the class of vehicles described above "have defective

pollen filters, pollen filter housing seals, plenum drains, powertrains, transmissions and

transmission control modules ("TCM")." Delguercio Compl. ¶ 1. The Dewey Plaintiffs allege

design defects in the Class Vehicles' pollen filter gasket areas and sunroof drains. See Dewey

Compl. ¶ 1. Both putative classes allege that, as a result of these defects, the Class Vehicles were

damaged by flooding. See Delguercio Compl. ¶ 7 ("[T]he Class Vehicles' defects allowed the

plenum drain to easily clog with debris, causing water to pool in the cowl area and spill over or

drain into the vehicles' interior through the pollen housing seal and the pollen filter itself, and the

location, housing, and placement of the TCM's [sic] allow the powertrain, transmission, and

TCM to be damaged by water entering the interiors of the Class Vehicle[s]."); Dewey Compl. ¶ 1

3

("Both defects cause, inter alia, serious flooding in the body of the vehicle which significantly impairs the safety, usability and the value . . . of the Class Vehicles.").

Both putative classes allege that Defendants were aware of these defects, but improperly failed to notify class members of the known defects.  See Delguercio Compl. ¶ 33-34; Dewey Compl. ¶¶ 45-47, 52-67.  Both putative classes bring claims for breach of express warranty, see Delguercio Compl. ¶¶ 27-35, Dewey Compl. ¶¶ 77-84; breach of implied warranty, see Delguercio Compl. ¶¶ 36-47, Dewey Compl. ¶¶ 85-93; breach of duty of good faith and fair dealing, see Delguercio Compl. ¶¶ 54-58, Dewey Compl. ¶¶ 109-113; negligent misrepresentation, see Delguercio Compl. ¶¶ 59-62, Dewey Compl. ¶¶ 102-108; violation of the New Jersey Consumer Fraud Act, see Delguercio Compl. ¶¶ 63-66, Dewey Compl. ¶¶ 68-76; unjust enrichment, see Delguercio Compl. ¶¶ 67-72, Dewey Compl. ¶¶ 114-118; and common law fraud, see Delguercio Compl. ¶¶ 73-76, Dewey Compl. ¶¶ 94-101.  Plaintiff Delguercio includes separate counts for improper repair and breach of warranty, see Delguercio Compl. ¶¶ 48-53, and injunctive relief, see Delguercio Compl. ¶¶ 77-78.

For purposes of the analysis that follows, it is important to establish at the outset certain basic and undisputed facts as to each Class Representative and their Class Vehicle.  These facts include the residence of each Class Representative, where each Class Representative purchased their Class Vehicle, the duration of the express warranty on their Class Vehicle, and when the alleged damage to their vehicle occurred.

• Plaintiff Delguercio is a New Jersey resident who purchased a 2001 Passat in New Jersey on or around October 3, 2000 with a 2 year/24,000 mile warranty.  See Delguercio Compl. ¶¶ 13, 18; Frederick Decl. Ex. F (Bill of sale), Ex. G (2001 Passat Warranty).

4

The damage to Delgeurcio's vehicle allegedly occurred after the vehicle "had been driven approximately 56,000 miles . . . ."  Delguercio Compl. ¶ 19.

- Plaintiff Dewey is a Maryland resident who purchased a 2002 Volkswagen Passat in Maryland on or around April 27, 2002 with a 4 year/50,000 mile warranty.  See Dewey Compl. ¶ 17; Frederick Decl. Ex. A (Warranty record for Dewey vehicle), Ex. B (2002 Passat Warranty).  Dewey alleges the damage to his vehicle occurred in July 2006.  See Dewey Compl. ¶ 18.

- Plaintiff DeMartino is a resident of New Jersey who owns a 1999 Passat.  See id. ¶ 20. DeMartino's vehicle was originally sold in New Jersey on or around May 28, 1999 with a 2 year/24,000 mile warranty.  See Frederick Decl. Ex. C (Warranty record for DeMartino vehicle), Ex. D (1999 Passat Warranty).  Mr. DeMartino alleges that the damage to his vehicle occurred "[i]n 2006 . . . ."  See Dewey Compl. ¶ 21.

- Plaintiff Romeo is a New York resident who purchased a 2003 Passat on or around May 14, 2003 in New York.[2]  See Dewey Compl. ¶ 23; Frederick Decl. Ex. E (Retail certificate for Romeo vehicle).  Ms. Romeo alleges that the damage to her vehicle occurred "[i]n February of 2005 . . . ."  See Dewey Compl. ¶ 24.

---

[2]        The parties do not specify the length of Plaintiff Romeo's warranty.  Defendants appear to concede, however, that the damage to Ms. Romeo's vehicle occurred within the warranty period.  See Mot. at 14.

## II. STANDARD

### A. Standard for Service Upon Foreign Corporations

Federal Rule of Civil Procedure Rule 4(h) provides two methods for the service of a foreign corporation.  First, Rule 4(h)(1)(A) permits service upon a foreign corporation "in the manner prescribed by Rule 4(e)(1) for serving an individual."  FED. R. CIV. P. 4(h)(1)(A).  Rule 4(e)(1) permits service upon an individual by following, among other things, "[the] state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located."  FED R. CIV. P. 4(e)(1).  New Jersey Court Rule 4:4-4(a)(6) provides that personal jurisdiction can be obtained over a non-New Jersey defendant corporation by "serving a copy of the summons and Complaint on any officer, director, trustee or managing or general agent, or any person authorized by appointment or by law to receive service of process on behalf of the corporation."  N.J. CT. R. 4:4-4(a)(6).

Second, Rule 4(h)(1)(B) permits service upon a foreign corporation "by delivering a copy of the summons and of the Complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process. . . ."  FED. R. CIV. P. 4(h)(1)(B).  Thus, both Rule 4(h) and New Jersey law permit service of process upon a foreign corporation by serving an agent of the foreign corporation who is authorized by appointment or by law to receive it.  See Signs by Tomorrow-USA, Inc. v. G.W. Engel Co., Inc., Civ. No. 05-4353, 2006 WL 2224416, *3-4 (D.N.J. Aug. 1, 2006); Glass v. Volkswagen of Am., Inc., 172 F. Supp. 2d 743, 743 (D. Md. 2001).  Here, VWAG, VWDM and AAG claim that VWoA and its registered agent, CT, are not their appointed agents.  Whether Rule 4(h) or New Jersey law is

6

applied, the central inquiry is whether VWoA is an "agent by law" of any of the other

Defendants.

## B. Motion to Dismiss

Motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a

claim result in a determination on the merits at an early stage of a plaintiff's case. See Mortensen

v. First Fed. Sav. and Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). As a result, "plaintiff is

afforded the safeguard of having all its allegations taken as true and all inferences favorable to

plaintiff will be drawn." Id. In order to survive a 12(b)(6) motion to dismiss, "[t]he plaintiff

must allege facts sufficiently detailed to 'raise a right to relief above the speculative level,' and

must 'state a claim to relief that is plausible on its face.'" Pronational Ins. Co. v. Shah, No. 07-

1774, 2007 WL 2713243, *1 (E.D. Pa. Sept. 17, 2007) (quoting Bell Atlantic Corp. v. Twombly,

127 S. Ct. 1955 (2007)). At this stage, the Court must determine whether the complaint

"contain[s] either direct or inferential allegations respecting all the material elements necessary to

sustain recovery under some viable legal theory." Haspel v. State Farm Mut. Auto. Ins. Co., No.

06-3716, 2007 WL 2030272, *1 (3d Cir. July 16, 2007) (quoting Twombly, 127 S. Ct. at 1969).


## III.  DISCUSSION

### A. Whether Service on the Foreign Defendants was Proper

The issue before the Court is whether the summonses and Complaints directed to the

foreign defendants, but served upon VWoA's office in Michigan and upon CT in New Jersey,

constitute proper service. As noted above, the central inquiry is whether VWoA is an "agent by

law" of any of the foreign defendants.

7

i. Whether VWoA is an Agent of VWAG for Service of Process

In Delguercio, process for the foreign Defendants was delivered to an office of VWoA, a wholly owned subsidiary of VWAG.  Affirmation of Joseph S. Folz ("Folz Aff.") at ¶ 13.  Under New Jersey law, service on a wholly owned subsidiary confers jurisdiction over the foreign parent only if the subsidiary is an alter ego or agent of the parent.  Patent Incentives, Inc. v. Seiko Epson, Corp., Civ. No. 88-1407, 1988 WL 92460 (D.N.J. Sept. 6, 1988) (citing Akzona Inc. v. E.I. DuPont de Nemours & Co., 607 F. Supp. 227, 236-37 (D. Del. 1984)).  To determine if a subsidiary is acting as an agent of the parent, courts consider: (1) whether the subsidiary is doing business in the forum that would otherwise be performed by the parent, Seltzer v. I.C. Optics, Ltd., 339 F. Supp. 2d 601, 609-10 (D.N.J. 2004); see also Cintron v. W&D Machinery, Co., Inc., 440 A.2d 76, 80 (N.J. Super Ct. Law Div. 1981) (stating that a subsidiary that is a "mere instrumentality of the foreign corporation . . . should be held to occupy the status of a managing agent of the foreign corporation within the meaning of statutory provisions authorizing service of process upon a managing agent of a corporation"); (2) whether there is common ownership of the parent and subsidiary; (3) whether there is financial dependency; and (4) whether the parent interferes with the subsidiary's personnel, disregards the corporate formalities, and/or controls the subsidiary's marketing and operational policies, Carfagno v. Ace, Ltd., Civ. No. 04-6184, 2005 WL 1523530, * 6 (D.N.J. June 28, 2005) (quoting Pfundstein v. Omnicom Group Inc., 666 A.2d 1013, 1016-17 (N.J. Super Ct. App. Div. 1995)).

Applying these factors to the record it is apparent that the relationship between VWAG and VWoA is so close that VWoA operates as an agent of VWAG by law for the purpose of service of process.  First, VWAG owns 100% of the outstanding stock of VWoA.  Folz Aff. at

8

¶ 13.  Second, VWoA is the sole authorized U.S. importer and distributor of vehicles manufactured by VWAG.  Id. at ¶ 7.  Third, VWAG has the power to appoint VWoA's President and CEO.  See Sporn Dec. at Ex. 3 (news article on VWAG's website stating that VWAG has appointed the president and CEO of VWoA).  Fourth, the Importer Agreement governing the relationship between VWAG and VWoA illustrates that VWAG has substantial control over VWoA's activities.  See Folz Aff Ex. A at 6 (stating "VWoA shall not modify Contractual Products [vehicles] without the prior written approval of VWAG.  However, to the extent that VWAG deems modification of Contractual Products necessary or desirable because of technical considerations, VWAG may at any time prior to shipment modify the Contractual Product delivered to VWoA, or may require VWoA to modify the Contractual Product at VWAG's expense"), 7 (stating "VWAG shall, to the extent it deems appropriate, advise and assist VWoA"), 9 (stating "VWOA shall take . . . in the name of VWAG, all measures, including the institution and prosecution of lawsuits, which may be reasonably required to prevent" trademark infringement and comply with VWAG's legal department's instructions), 12 (stating that VWoA shall conclude agreements with the Contractual Enterprises based upon uniform terms and conditions prepared by it from time to time after due consultation with VWAG and they will agree upon the annual sales and VWAG shall place firm orders), 13.  Indeed, the Importer Agreement is not limited only to matters of importation of VWAG vehicles.  The Importer Agreement also governs every phase of VWoA's operation, including VWoA's marketing, distribution and sales of VWAG vehicles, the proliferation and development of independent dealerships that sell VWAG products, the training of dealership personnel, after-sales service, warranties and recalls, and the terms of payment between individual customers and VWoA.  Id.

at 6-22.  Based on this relationship, it is apparent that VWAG cannot do business in the United States absent its wholly owned subsidiary.  "[A]s the documents demonstrate, the relationship goes far beyond that of simply parent and subsidiary.  The provisions quoted above prove that the authority of VWAG is absolute, and that, in a very real sense, VWAG determines on a day-to-day basis exactly how VW[o]A is to operate."  <u>Lamb By and Through Donaldson v. Volkswagenwerk Aktiengesellschaft</u>, 104 F.R.D. 95, 101 (S.D. Fla. 1985).  The Court finds that VWoA is an agent of VWAG by law for service of process because "the subsidiary is doing business in the forum that would otherwise have to be done in the forum by the parent."[3]  <u>Seltzer</u>, 339 F. Supp. 2d at 609.  The motion to quash service upon VWAG in <u>Delguercio</u> is denied.

---

[3]      A number of courts have found that the nature of the relationship between VWoA and VWAG anoints VWoA as an agent by law of VWAG for the purpose of service of process. <u>See</u> <u>Lamb By and Through Donaldson</u>, 104 F.R.D. at 100 (stating that the "parent-subsidiary relationship between VWAG and VWOA is such as to make it more than reasonably certain that VWOA will turn over the process served on it for VWAG to VWAG, and that the service of process on VWOA in this cause [sic] was sufficient to give adequate notice to the parent corporation"), <u>aff'd</u>, <u>Eddings on Behalf of Eddings v. Volkswagenwerk, A.G.</u>, 835 F.2d 1369, 1373 (11th Cir.1988); <u>Schlunk v. Volkswagenwerk Aktiengesellschaft</u>, 503 N.E.2d 1045, 1046, 1054 (Ill. App. Ct. 1986) (affirming lower court holding that "VWoA and VWAG are so closely related that VWoA is an agent for service of process as a matter of law, notwithstanding VWAG's failure or refusal to have made such a formal appointment of VWoA as its agent."), <u>aff'd</u>, <u>Volkswagenwerk Aktiengesellschaft v. Schlunk</u>, 486 U.S. 694, 697 (1988) (explaining that, in concluding that VWoA is an agent of VWAG, the Illinois Court of Appeals properly "relied on the facts that VWoA is a wholly owned subsidiary of VWAG, that a majority of the members of the board of directors of VWoA are members of the board of VWAG, and that VWoA is by contract the exclusive importer and distributor of VWAG products sold in the United States"); <u>Luciano v. Garvey Volkswagen, Inc.</u>, 521 N.Y.S.2d 119, 121 (N.Y. App. Div. 1987) (stating that "[VWoA] is so dominated by its parent that [VWoA] represents VWAG for purposes of service"); <u>but cf.</u> <u>Derso v. Volkswagen of Am., Inc.</u>, 552 N.Y.S.2d 1001, 1002 (N.Y. App. Div. 1990) (collecting cases in which courts have found an agency relationship between VWoA and VWAG, but concluding on the facts presented that plaintiff had failed to do so).

In <u>Dewey</u>, the record is clear that VWoA designated CT to receive service on its behalf and that the <u>Dewey</u> Plaintiffs served CT with summonses and Complaints to be forwarded to VWoA. Uva Aff.  ¶¶ 6-10.  On October 29, 2007, the Dewey Plaintiffs served CT with a summons and Complaint, which was directed to "Volkswagen of America, Inc., . . ." "as an agent for Volkswagen AG."  Gsovski Aff. Ex. A.  CT forwarded the summons and Complaint to VWoA.  <u>Id.</u>  As a result, there is no doubt that VWoA is in possession of the summons and Complaint meant for VWAG.  Defendants do not argue that CT was precluded from forwarding to VWoA the documents directed to VWAG.  Rather, Defendants challenge service by claiming that VWoA is not an agent authorized to accept service for VWAG.  Therefore, as in <u>Delguercio</u>, the issue is whether VWoA can accept service on behalf of VWAG as an agent.  For the reasons set forth above, the Court finds that VWoA is an agent of VWAG for the purpose of service of process.  The motion to quash service upon VWAG in <u>Dewey</u> is denied.

ii. Whether VWoA is an Agent of AAG or VWDM for Service of Process

The <u>Delguercio</u> and <u>Dewey</u> Plaintiffs have failed to produce sufficient evidence to show that VWoA is either an agent or an alter ego of AAG.  AAG is a subsidiary of VWAG, Sporn Dec. at Ex. 2, and the record reflects that VWAG's contacts with AAG are extensive.  <u>See</u> Slater Cert. at Ex. H.  The relationship between VWoA and AAG, however, is not as substantial.  The VWoA-AAG relationship is governed by an Importer Agreement that resembles the Importer Agreement between VWAG and VWoA.  <u>See</u> Folz Aff. Exs. A, B and C.  Nothing in the record, however, establishes that AAG has the same type of control over VWoA as VWAG has over VWoA.  For example, there is nothing in the record to show that VWoA is a subsidiary of AAG or that AAG has any ownership interest in VWoA.  Folz Aff. at ¶¶ 11-12.  Moreover, Plaintiffs

11

have not submitted any evidence that either AAG or VWoA selects or plays any part in the selection of the senior management of the other.  Based upon the evidentiary record, this Court declines to find that VWoA is the agent by law for AAG and will not impute service of process upon VWoA to AAG.

The evidence that VWoA is an agent of VWDM is weaker still.  First, there is no evidence that either VWoA or VWDM has an ownership interest in the other; indeed, VWAG owns both VWoA and VWDM.  Second, the agreement between VWDM and VWoA is akin to a supply agreement and it lacks language suggesting that either party to the agreement controls the activities of the other.  See Glass v. Volkswagen of Am., Inc., 172 F. Supp. 2d 743, 744 (D. Md. 2001) (declining to find that VWoA is an agent for VWAG or VWDM because no evidence was produced to justify piercing the corporate veil).

Finally, Plaintiffs have not presented legal authority permitting a subsidiary (VWoA) of a parent (VWAG) to accept service on behalf of the parent corporation's other subsidiaries (AAG and VWDM).  The case law reveals that the relevant inquiry is not whether two companies share a parent, but rather the level of control exercised by one entity over another.  See Colida v. LG Elecs., Inc., Civ. No. 03-1399, 2003 WL 22319221, *2 (D.C. Cir. Oct. 8, 2003) (stating that a "parent-subsidiary relationship without more does not establish an agency relationship for purposes of service of process. . . .").  Thus, the fact that AAG, VWDM, and VWoA share a corporate parent or that one serves as an agent for the parent does not make that subsidiary an agent for all of its parent's subsidiaries.

The factual record prevents the Court from finding that VWoA or CT are agents of either VWDM or AAG for the purposes of service, and no legal authority has been presented to

12

demonstrate that as VWAG's agent, VWoA is authorized by law to accept service for a fellow subsidiary.  The Court finds that service has not been effectuated on AAG or VWDM.[4]  The Motions to Quash Purported Service of Process in <u>Delguercio</u> and <u>Dewey</u> are denied as to VWAG.  The motions are granted as to VWDM and AAG.

### B. Choice of Law in Defendants' Motion to Dismiss

New Jersey is the "forum state" for the instant litigation, and the Court "must apply the law of the forum state, including its choice of law rules."  <u>Barbey v. Unisys Corp.</u>, No. 06-2849, 2007 WL 4219470, *1 (3rd Cir. Nov. 30, 2007) (citing <u>Klaxon Co. v. Stentor Electric Mfg. Co.</u>, 313 U.S. 487, 496 (1941)).  New Jersey "currently subscribe[s] to the more flexible governmental-interests analysis."  <u>Rowe v. Hoffman-La Roche, Inc.</u>, 917 A.2d 767, 771 (N.J. 2007).  The governmental interest approach requires a two-step analysis:

> "The first step in the analysis is to determine whether a conflict exists between the laws of the interested states. Any such conflict is to be determined on an issue-by-issue basis."  If there is no actual conflict, then the choice-of-law question is inconsequential, and the forum state applies its own law to resolve the disputed issue.

<u>Id.</u> at 621 (quoting <u>Veazey v. Doremus</u>, 510 A.2d 1187, 1189 (N.J. 1986)) (internal citations omitted).

---

[4] Because the Court has found that service has not been effectuated on AAG or VWDM, the Court need not resolve the dispute concerning the alleged alteration to the summons and Complaint directed to them in the <u>Dewey</u> case.

Plaintiffs' claims can be categorized into three groups: those that sound in contract or quasi-contract,[5] those that sound in tort,[6] and those that sound in fraud.[7]  Each category will require the Court to undertake a slightly different choice-of-law analysis.  For Plaintiffs' contract claims, the Court considers the factors described in the Restatement (Second) of Conflict of Laws § 188.  See CSR Ltd. v. Cigna Corp., No. 95-2547, 2005 WL 3132188, *13 (D.N.J. Nov. 21, 2005) ("In so doing, the New Jersey Supreme Court requires that courts consider the guidance of the Restatement.").  As one court has explained:

> In the context of contract matters, the Restatement provides that "[i]f the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied" unless the principles stated in § 6 dictate a different result. Section 188 offers various contacts for courts to consider in applying the principles of § 6 to contract issues, including: "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties."  "These contacts are to be evaluated according to their relative importance with respect to the particular issue."

Id. at *13 (internal citations omitted) (citing Gilbert Spruance Co. v. Pa. Mfrs.' Assoc. Ins. Co., 629 A.2d 885, 888 (N.J. 1993)).  In tort cases, "four factors must be taken into account: 1) the place where the injury occurred; 2) the place where the conduct causing the injury occurred; 3)

---

[5]     See Dewey Compl. Counts II (breach of express warranty), III (breach of implied warranty), VI (breach of duty of good faith and fair dealing), VII (unjust enrichment); Delguercio Compl. Counts I (breach of express warranty), II (breach of implied warranty), III (improper repair and breach of warranty), IV (breach of good faith and fair dealing), VII (unjust enrichment).

[6]     See Dewey Compl. Count V (negligent misrepresentation); Delguercio Compl. Count V (negligent misrepresentation).

[7]     See Dewey Compl. Counts I (New Jersey Consumer Fraud Act), IV (common law fraud); Delguercio Compl. Counts VI (statutory consumer fraud), VII (common law fraud).

the domicile, residence, nationality, place of incorporation, and place of business of the parties; and 4) the place where the relationship, if any, between the parties is centered." Weisbrot v. Schwimmer, No. 97-2711, 2007 WL 2683642, *3 (D.N.J. Sept. 7, 2007) (citing Lebegern v. Forman, 471 F.3d 424, 428-29 (3d Cir. 2006)). For tort claims that sound in fraud the Restatement lists several relevant contacts to determine which state has the most significant relationship to the occurrence and the parties. In fraud claims, New Jersey courts look to these factors:

> The Restatement [(Second) Conflict of Laws § 148(2)(a)-(f)] enumerates six contacts[:]
>
> (a) the place . . . where the plaintiff acted in reliance upon the defendant's representations, (b) the place where the plaintiff received the representations, (c) the place where the defendant made the representations, (d) the . . . place of incorporation and place of business of the parties . . . (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time and (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

Pratt v. Panasonic Consumer Electronics Co., 2006 WL 1933660, 12 (N.J. Super. Ct. Law Div. July 12, 2006) (internal citations omitted).

As the New Jersey Supreme Court has noted, choice of law analysis must be undertaken on an issue-by-issue basis. Rowe, 917 A.2d 767, 771 (N.J. 2007). Clearly, New Jersey law will apply to the claims of Plaintiffs Delguercio and DeMartino, both of whom purchased their Volkswagens in New Jersey, and both of whom are New Jersey residents. See Dewey Compl. ¶ 20; Delguercio Compl. ¶ 13; Frederick Decl. Ex. C (warranty record for DeMartino vehicle); Frederick Decl. Ex. F (invoice for Delguercio vehicle). By contrast, however, Plaintiffs Romeo and Dewey and their alleged injuries have little connection with the state of New Jersey. The

15

sole factor suggesting the application of New Jersey law to Plaintiffs Romeo and Dewey is

VWoA's incorporation in the state of New Jersey.[8]  See Dewey Compl. ¶ 28.  Such limited

---

[8]     Defendants concede that, for the non-New Jersey residents, the only contacts with New Jersey are "Defendants' incorporation in New Jersey . . . [and] substantial sales and servicing [of] the Class Vehicles in New Jersey."  Dewey Br. 15-16.  As the Restatement tests cited above make clear, the selling and servicing of Class Vehicles owned by individuals other than the named Plaintiffs is not relevant to the Court's choice-of-law analysis at this stage of the litigation.  The fact that a non-party may have also purchased a Class Vehicle in New Jersey has little bearing on whether this Court will apply New Jersey law to a named Plaintiff who resides in another state and purchased his car in another state.

The Dewey Plaintiffs fail to cite to a single case in which a court applying New Jersey's "governmental interest" test has applied the laws of New Jersey based on contacts with the state as limited as those presented here.  First, the Dewey Plaintiffs cite to Dal Ponte v. American Mortg. Exp. Corp., No. 04-2152, 2006 WL 2403982, (D.N.J. Aug. 17, 2006).  In contrast to the limited contacts outlined above, the court in Dal Ponte noted that

> AMX is a New Jersey corporation. Its principal place of business is in Cherry Hill, New Jersey. The loan officers who spoke with the proposed class members were employed in New Jersey. The loan applications of the proposed class members appearing on the cancelled loans list were processed in AMX's Mt. Laurel, New Jersey, branch office. It appears also that the underwriting decisions for these applications were made in New Jersey. While AMX served clients and provided financing for properties across the country, it conducted its part of the transactions in New Jersey.

Id. at *7.  The contacts in Dal Ponte were far more substantial than those present in the instant case.

Plaintiffs' reliance on O'Keefe v. Mercedes-Benz USA, LLC, 214 F.R.D. 266, 274 (E.D. Pa. 2003) is similarly misplaced.  First, in O'Keefe the court applied Pennsylvania's choice-of-law rule, not New Jersey's choice-of-law rule.  See id.  Second, the court ultimately applied New Jersey law based on contacts far more substantial than those present here.  See id. As the court noted:

> We have little doubt that New Jersey law would govern the claims brought by all members of plaintiff's class because New Jersey is where the alleged misconduct and fraudulent concealment took place and where the alleged deceptive statements originated. It is where the bulk of discovery was conducted. MBUSA has its principle place of business in New Jersey. New Jersey has a policy interest in regulating its resident corporations. It may be proper to apply the New Jersey Consumer Fraud Act.

Id.  As noted above, contacts of this magnitude are not present in the case at bar.

16

contract with the forum state will necessarily inform the Court's approach to each successive choice-of-law issue.

With the above factors in mind, the Court will now turn to the arguments in Defendants' motion to dismiss.

### C. Plaintiffs' Express Warranty Claims

#### i. Limited Warranty Claims

The Dewey Plaintiffs and Plaintiff Delguercio bring express warranty claims.  See Dewey Compl. ¶¶ 77-84; Delguercio Compl. ¶¶ 27-35.  Defendants argue that the alleged defects appeared outside the express warranty periods for Plaintiffs Dewey, DeMartino, and Delguercio and that these three Plaintiffs' express warranty claims are barred by UCC § 2-725.  Section 2-725 is the same in New Jersey,[9] New York,[10] and Maryland,[11] and reads in relevant part:

> (1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.

> (2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

---

[9]      See N.Y. U.C.C. § 2-725.

[10]      See N.J. STAT. ANN. § 12A:2-725.

[11]      See MD. CODE ANN. COM. LAW § 2-725.

17

UCC § 2-725.  Because the relevant UCC section is the same in all three states, there is no "conflict" under New Jersey's "governmental interest" test.  The Court may therefore proceed to consider the relevant UCC section without undertaking a detailed conflict-of-law analysis.[12]

Defendants argue that Plaintiffs have failed to state a claim because their alleged injuries occurred outside the express warranty.  In general, "an express warranty does not cover repairs made after the applicable time . . . ha[s] elapsed."  Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604, 616 (3d Cir. 1995) (quoting Abraham v. Volkswagen of Am., Inc., 795 F.2d 238, 250 (2d Cir. 1986)).  Rather, "[t]he case law almost uniformly holds that time-limited warranties do not protect buyers against hidden defects which are typically not discovered until after the expiration of the warranty period."  Northeastern Power Co. v. Balcke-Durr, Inc., No. 97-4836, 1999 WL 674332, *5 (E.D. Pa. Aug. 23, 1999).  As a result, the Third Circuit has held, "'latent defects discovered after the term of the warranty are not actionable.'"  Duquesne Light Co., 66 F.3d at 616 (quoting Abraham, 795 F.2d at 249-50); see also Canal Elec. Co. v. Westinghouse Elec. Co., 973 F.2d 988, 993 (1st Cir. 1992) ("[C]ase law almost uniformly holds that time-limited warranties do not protect buyers against hidden defects – defects that may exist before, but typically are not discovered until after, the expiration of the warranty period.").

The Dewey Plaintiffs rely on two cases for the proposition that "a defect is actionable if it was known to defendants during the warranty period, but was by fraud or concealment, made undiscoverable to plaintiffs."  See Dewey Opp. at 18.  The Dewey Plaintiffs first direct the Court to Northeastern Power Company, 1999 WL 674332.  Northeastern Power Company concerns

---

[12]      The parties concede this point and do not undertake a detailed conflict of laws analysis.  See Mot. at 16; Dewey Opp. at 20.

warranty coverage for a defect that allegedly manifested <u>during</u> the warranty period, but which was nevertheless undetected by the warranty holder.  <u>See</u> 1999 WL 674332 at *6.  In the case at bar, Plaintiffs Dewey, Delgeurcio and DeMartino allege that the defects in their vehicles manifested <u>outside</u> the warranty period.  <u>Northeastern Power Company</u> does not address the claim at issue in this case.

Plaintiffs also rely on <u>Alberti v. General Motors Corp</u>. to support their express warranty claim.  The Plaintiffs in <u>Alberti</u> made allegations similar to those made here:

> Plaintiffs here contend that GM knew the X-car braking system of its X-cars concentrated excess braking force on the rear axle at the time the vehicles left the assembly line but nevertheless failed either to rectify the situation or to disclose it to their purchasers. Thus, plaintiffs charge, the defect did not remain "latent" until the vehicles first exhibited control problems for the drivers, but, rather, was patent – at least to GM – in the sense that, as each automobile was sold, it exposed the owner (and the public) to the potential of a loss of vehicle control. It was the time of the sales, therefore, that plaintiffs maintain the loss for which they make claim here – the diminished value of the cars they purchased-was incurred, for it was then that GM broke its warranty that the brakes would function safely, and that the automobiles were merchantable and fit for the purpose of providing the ordinary transportation plaintiffs expected of them.

<u>Alberti v. General Motors Corp.</u>, 600 F. Supp. 1026, 1028 (D.D.C. 1985) (internal citations omitted).  The <u>Alberti</u> court approved of the plaintiffs' theory and, as Defendants concede, <u>Alberti</u> "squarely espouse[s] the rule Plaintiffs propose."  Rep. Br. at 8.

This Court is not bound by <u>Alberti</u>'s holding and finds it unpersuasive for the following reasons.  First, shortly after it was decided, <u>Alberti</u> was roundly and persuasively rejected by the Second Circuit in <u>Abraham v. Volkswagen of Am., Inc.</u>, 795 F.2d 238, 249-51 (2d Cir. 1986); <u>see also</u> <u>Bussian v. DaimlerChrysler Corp.</u>, 411 F. Supp. 2d 614, 621 (M.D.N.C. 2006) (noting that "<u>Abraham</u> stands for the broad, nearly universally accepted proposition that a latent vehicle

defect known to the manufacturer at the time of sale that does not manifest itself until after expiration of the express warranty does not, in and of itself, give rise to a breach of express warranty claim" and collecting cases).  In Abraham the Second Circuit explained that

> virtually all product failures discovered in automobiles after expiration of the warranty can be attributed to a "latent defect" that existed at the time of sale or during the term of the warranty. All parts will wear out sooner or later and thus have a limited effective life. Manufacturers always have knowledge regarding the effective life of particular parts and the likelihood of their failing within a particular period of time. Such knowledge is easily demonstrated by the fact that manufacturers must predict rates of failure of particular parts in order to price warranties and thus can always be said to "know" that many parts will fail after the warranty period has expired. A rule that would make failure of a part actionable based on such "knowledge" would render meaningless time/mileage limitations in warranty coverage.

Abraham, 795 F.2d at 250.  As the Abraham court noted, the Alberti court's approach "suggests that the [Alberti] court confused concepts of implied and express warranty."  Id.

Second, in Duquesne Light Co. v. Westinghouse Elec. Corp., the Third Circuit strongly suggested that the Second Circuit's approach controls in this circuit.  66 F.3d 604, 616 (3d Cir. 1995).  In Duquesne the Third Circuit noted that "the general rule, from which we see no reason to deviate, is that 'an express warranty does not cover repairs made after the applicable time . . . ha[s] elapsed.'"  Id. (quoting Abraham, 795 F.2d at 250).  Plaintiffs attempt to distinguish Duquesne by noting that, unlike here, the defect in Duquesne was "latent" as to both parties.  See Dewey Opp. at 17 n.6.

For purposes of Plaintiffs' claims, this is a distinction without a difference.  First, the above-quoted language from Dusquene is unambiguous and makes no distinction based on the seller's knowledge: if the repair is sought outside the warranty period, it is not covered by the express warranty.  Second, the Second Circuit's extensive discussion of the "knowledge" issue in

20

Abraham leaves little doubt as to the court's holding.  In relying on Abraham, the Third Circuit was unquestionably aware of the Second Circuit's view that

> [m]anufacturers always have knowledge regarding the effective life of particular parts and the likelihood of their failing within a particular period of time. . . . A rule that would make failure of a part actionable based on such "knowledge" would render meaningless time/mileage limitations in warranty coverage.

Abraham, 795 F.2d at 250.  Because the above-quoted passage was central to Abraham's holding, this Court must assume that the Third Circuit was aware of its implications.  Finally, the Second Circuit in Abraham was unambiguous in its rejection of Alberti's holding, upon which Plaintiffs now seek to rely.  See 795 F.2d at 250.  The Second Circuit structured its entire discussion of the express warranty issue as an explicit rejection of Alberti's holding.  Id.  The Court will not assume that the Third Circuit relied on Abraham but yet intended to preserve a point of law so explicitly rejected by that case.  For the above reasons, the Court finds that Plaintiffs Dewey, DeMartino, and Delguercio have failed to state a claim for coverage under their limited express warranties.  The Court will grant Defendants' motion as to those claims.

### ii. Powertrain Warranty Claim

Plaintiff Delgeurcio and the Dewey Plaintiffs also suggest that a factual issue exists as to whether the damages suffered by Plaintiffs are covered by Volkswagen's 10 year/100,000 mile limited powertrain warranty.  See Delguercio Br. at 11; Dewey Br. at 17 n.5.  First, it must be noted that "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."  Pension Ben. Guar. Corp. v. White Consol. Industries, Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) (citing Cortec Indus., Inc. v. Sum Holding, L.P., 949 F.2d 42, 48 (2d Cir. 1991), cert. denied, 503 U.S.

960 (1992); Goodwin v. Elkins & Co., 730 F.2d 99, 113 (3d Cir.) cert. denied, 469 U.S. 831

(1984)); see also, e.g., Jones v. Middletown Tp., No. 06-3574, 2007 WL 3326854, *3 (3d Cir.

Nov. 8, 2007).  Because Plaintiffs' claims are based on each vehicle's express warranty, and

because Plaintiffs do not dispute the authenticity of the warranties attached to Defendant's

motion to dismiss, see Frederick Decl. Ex. A (DeMartino Warranty), B (Delguercio Warranty), C

(Dewey Warranty), D (Romeo Warranty), the Court may rely upon the warranties in deciding

Defendants' motion to dismiss.

Each of the Plaintiffs' powertrain warranties are substantially similar and read as

follows:[13]

> The Limited Powertrain Warranty covers any repair to correct a [manufacturer's]
> defect in material or workmanship for the following [Volkswagen] parts and
> components:
>
> **Engine:** cylinder block and all internal parts, cylinder head and all internal parts,
> valve train, spur belt, flywheel, oil pump, water pump, manifolds, all related seals
> and gaskets.
>
> **Transmission:** case and all internal parts, torque converter, all related seals and
> gaskets.
>
> **Drivetrain:** differential and all internal parts, drive shafts and constant velocity
> (CV) joints.

See Frederick Decl. Ex. B, C, D.  A natural reading of the warranty language leads to the

conclusion that the defect must be in one of the listed parts.  The warranty does not purport to

cover damage done to listed components as a result of defects in non-listed components. It would

clearly work a substantial change in the scope of the warranty to read the above language to

---

[13]     The Delguercio, Dewey, and Romeo warranties are identical.  The DeMartino
warranty differs slightly, but not materially. The DeMartino warranty excludes the two bracketed
words in the warranty language quoted.  See Frederick Decl. Ex. A.

include damage caused by a defect in a part <u>not</u> on the list.  Because the allegedly defective

plenum drain and pollen filter are not powertrain components, the only applicable warranty

applicable to those parts is the "New Vehicle" warranty, which, as discussed above, had expired

as to Plaintiffs DeMartino, Delguercio and Dewey.  In other words, the mere allegation that a

covered part <u>failed</u> is insufficient without an allegation that a covered part also suffered from a

"defect in material or workmanship."  The Dewey Plaintiffs' allegations do not, therefore, bring

their alleged injuries within the scope of the powertrain warranty.  As a result, the Court will

grant Defendants' motion to dismiss Dewey, DeMartino, and Romeo's express warranty claims

in their entirety.

Plaintiff Delguercio directs the court to paragraph 29 of her complaint to support her

contention that she properly alleged a defect in part covered by the powertrain warranty.[14]

Paragraph 29 alleges that "the Class Vehicles . . . contained . . . defective powertrains,

transmissions, and TCM's the location, housing and placement of which allow the powertrain,

transmission, and TCM to be damaged by water entering the interior of the vehicles."

Delguercio Compl. ¶ 29; <u>see also</u> ¶ 1 ("The Class Vehicles . . . have defective . . . powertrains,

transmissions and transmission control modules . . . .").  In this part of paragraph 29, the

Delguercio Plaintiffs allege that the "location, housing and placement" of covered parts amounts

to a defect covered by the powertrain warranty.  As a result, the Court will grant Defendants'

motion to dismiss Delguercio's express warranty claim as to flooding caused by defective but

uncovered parts – specifically the pollen filter, pollen filter housing seal and plenum drain.  The

---

[14]     Plaintiff Delguercio suggests that paragraph 32 of her complaint also makes such
an allegation.  It does not.  Paragraph 32 is conclusory and states merely that "[t]he powertrain,
transmission, and TCM are covered by a 10 year/100,000 mile express warrant."  Delguercio
Compl. ¶ 32.

Court will deny Defendants' motion to dismiss Delguercio's express warranty claim on the limited question of whether "the location, housing and placement" of the powertrain, transmission, and TCM, "allow[ed] the powertrain, transmission, and TCM to be damaged by water entering the interior of the vehicles," and whether this constitutes a "defect in material or workmanship" under the extended warranty.

### iii. Statute of Limitations

Uniquely among the named Plaintiffs, Plaintiff Romeo's alleged injuries occurred within her express limited warranty period.  See Mot. at 14; see also Dewey Compl. ¶¶ 23-24 (noting that Romeo purchased her vehicle in 2003 and the damage occurred in February 2005); Frederick Decl. Ex. H (Warranty record for Romeo Vehicle) (noting that Romeo warranty expires 03/2007).  As a result, Defendants move to dismiss Plaintiff Romeo's express warranty claim on statute of limitations grounds.  See id. at 16.  UCC § 2-725 establishes the relevant statute of limitations of four years in New York, New Jersey, and Maryland.[15]  Defendants argue that Plaintiff Romeo's claim expired on March 3, 2007, prior to the filing of her Complaint on May 11, 2007.

Plaintiff Romeo argues that the statute of limitations should be tolled for fraudulent concealment.  See Dewey Opp. at 20-22.  The Court need not engage in a detailed choice-of-law analysis to determine whether Plaintiff Romeo has properly plead fraudulent concealment, because, for purposes of an express warranty claim, Plaintiff Romeo has failed to allege any fraudulent concealment on the part of Defendants regardless of which state's law applies.  The

---

[15]     Plaintiff Romeo does not argue that the statute of limitations on her express warranty claim is tolled by the terms of UCC § 2-725(2).

Dewey Complaint clearly alleges <u>knowledge</u> on the part of Defendants, but it does not allege fraudulent concealment.  The Complaint states that "Defendants were well aware of the pollen filter design flaw . . . [but] took no action to adequately warn or remedy the defect . . .", Dewey Compl. ¶ 45, and that "[t]o the detriment of its consumers, [Defendants] failed to and continues to fail to warn, or even mention, anything about the pollen filter . . .", <u>id.</u> ¶ 46.  In the context of an express warranty, <u>Abraham</u> makes clear that merely alleging that a defendant had knowledge of a defect is insufficient to state an express warranty claim for repairs outside the warranty period.  <u>See</u> 795 F.2d at 250 ("A rule that would make failure of a part actionable based on such 'knowledge' would render meaningless time/mileage limitations in warranty coverage.").  To equate mere knowledge with fraudulent concealment would undermine the scheme established by the UCC and would render virtually meaningless the repose offered by UCC § 2-725. Because Plaintiff Romeo has failed to allege anything beyond knowledge on the part of Defendants, her claim that the statute of limitations on her express warranty claim may be tolled for fraudulent concealment fails as a matter of law.  Defendants' motion shall be granted with leave to Plaintiff Romeo to replead within 10 days of this opinion if any other basis for tolling exists.

### D. Breach of Implied Warranty Claim

Plaintiffs also bring implied warranty claims under the Uniform Commercial Code.  <u>See</u> Dewey Compl. ¶¶ 85-93; Delguercio Compl. ¶¶ 36-47.  As with the express warranty claim discussed in Part III.C above, Plaintiffs' implied warranty claims are governed either by the four-year statute of limitations found in UCC § 2-725 or that section's tolling provision.  Section 2-725's tolling provision states that "where a warranty explicitly extends to future performance of

the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered."  UCC § 2-725; see also Mot. 18-20.[16]  This section is the same in New Jersey, Maryland, and New York.  Defendants argue that Plaintiffs' implied warranty claims are time barred under the four-year statute of limitations and that the tolling provision in UCC § 2-725 is inapplicable because an implied warranty, by definition, cannot "explicitly extend" to anything.  See Mot. at 19.

The Dewey Plaintiffs argue that their allegations of fraudulent concealment toll their implied warranty claims.  See Dewey Opp. 20-21; see also In re Ford Motor Co. Ignition Switch Products Liability Litigation, 1999 WL 33495352, *11 (D.N.J. 1999) (noting the elements of fraudulent concealment) vacated in part by In re Ford Motor Co. Ignition Switch Products, 1999 WL 34824273, *3 (D.N.J. 1999) ("the court denies Ford's motion for judgment on the pleadings on the Snodgrass plaintiffs' breach of implied warranty claims on statute of limitations grounds").  As a court in this district has noted:

> Three elements must be pleaded and proved in order to establish fraudulent concealment: (1) wrongful concealment by the party raising the statute of limitations defense, resulting in (2) plaintiff's failure to discover the operative facts forming the basis of his cause of action during the limitations period (3) despite the exercise of due diligence.

In re Ford Motor Co., 1999 WL 33495352 at *11 (citing Walsh v. Ford Motor Co., 588 F. Supp. 1513, 1522 (D.D.C.1984), as amended, 592 F. Supp. 1359 (D.D.C. 1984) and 612 F. Supp. 983 (D.D.C. 1985)).

---

[16]     Plaintiff Delguercio does not respond to Defendants' motion to dismiss her implied warranty claim.  Plaintiff Delguercio's opposition briefs focus solely on her express warranty claim.  See Delguercio Br. at 11-14.

Defendants do not address Plaintiffs' fraudulent concealment argument in the context of Plaintiffs' implied warranty claim.  See Mot. 18-22; Rep. 12.  Plaintiffs direct the Court to a single case based on New Jersey law, but do not discuss or address tolling for fraudulent concealment under either New York or Maryland law.  Because neither party adequately addresses on a state-by-state basis the law of tolling an implied warranty claim when a plaintiff has alleged fraudulent concealment, the Court will deny Defendants' motion to dismiss Plaintiffs' implied warranty claims on this ground.  Defendants may renew their statute of limitations argument, and may attack the sufficiency of Plaintiffs' allegations of fraudulent concealment, in a subsequent motion for summary judgment – in which both parties must address the law in each of the relevant states – if they so choose.[17]

---

[17]    Defendants also argue that under New York law, Plaintiff Romeo's claim is barred for lack of privity.  See, e.g., Inter Impex S.A.E. v. Comtrade Corp., No. 00-0133, 2004 WL 2793213, *5 (S.D.N.Y. Dec. 6, 2004) (Thus, "[u]nder New York law, absent privity of contract, a purchaser cannot recover mere economic loss against a manufacturer under a theory of breach of implied warranty."); Mot. at 20.  The Court finds that the issue of privity between the Defendants and the seller of Romeo's automobile involves issues of fact not appropriate for resolution at the motion to dismiss stage.  Defendants may renew this argument on a motion for summary judgment if they choose.

    Any subsequent motion for summary judgment on this ground shall discuss the exceptions to New York's privity requirement.  See, e.g., Hubbard v. General Motors Corp., No. 95-4362, 1996 WL 274018, *5 (S.D.N.Y. May 22, 1996) (discussing "thing of danger" exception to New York privity requirement); Gordon v. Ford Motor Co., 239 A.D.2d 156, 156 (N.Y. App. Div. 1997) ("Defendant correctly argues that there can be no implied warranty absent privity between itself and plaintiffs but, . . . such privity would exist if the dealerships with which plaintiffs dealt were defendant's sales or leasing agents, and disclosure is needed with respect to the latter possibility."); Christensen v. Fashion-Fain Homes, Inc., No. 05-248, 2005 WL 3440824, *3 (N.Y. Sup. Ct 2005) (denying motion to dismiss because issues of fact remain as to agency).  In any subsequent motion, the parties will be expected to research the relevant law in each relevant jurisdiction on this issue and each of the other issues that were inadequately briefed in the instant motion.

### E.  Failure to Plead Fraud with Particularity under Fed. R. Civ. P. 9(b)

All Plaintiffs bring common law fraud claims, see Dewey Compl. ¶¶ 95-101; Delguercio

Compl. ¶¶ 67-72, and statutory fraud claims under New Jersey's Consumer Fraud Act, see

Dewey Compl. ¶¶ 68-76 (for violation of New Jersey Consumer Fraud Act, N.J. STAT. ANN.

§ 12A:2-725 56:8-1 et seq.); Delguercio Compl. ¶¶ 63-66 (same).  Plaintiffs' common law fraud

claims are, of course, subject to the pleading requirements of Federal Rule of Civil Procedure

9(b).  Plaintiffs' statutory fraud claims are also subject to Rule 9(b)'s heightened pleading

standards.  See Naporano Iron & Metal Co. v. Am. Crane Corp., 79 F. Supp. 2d 494, 512 (D.N.J.

1999); see also Parker v. Howmedica Osteonics Corp., No. 07-2400, 2008 WL 141628, *2

(D.N.J. Jan. 14, 2008) ("Importantly, [New Jersey Consumer Fraud Act] claims 'sounding in

fraud' are subject to the particularity requirements of Federal Rule of Civil Procedure 9(b).").

Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the

circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a

person's mind may be alleged generally."  FED. R. CIV. P. 9(b).

The New Jersey Consumer Fraud Act provides a cause of action to "[a]ny person who

suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or

employment by another person of any method, act, or practice declared unlawful under this

act . . . ."  N.J. STAT. ANN. § 56:8-19.  "To state a cause of action under the CFA, a plaintiff must

allege: (1) an unlawful practice by the defendants; (2) an ascertainable loss by plaintiff; and (3) a

causal nexus between the first two elements – defendants' allegedly unlawful behavior and the

plaintiff's ascertainable loss."  Parker v. Howmedica Osteonics Corp., No. 07-2400, 2008 WL

141628, *2 (D.N.J. Jan. 14, 2008) (citing New Jersey Citizen Action v. Schering-Plough Corp.,

842 A.2d 174, 176 (N.J. Super. Ct. App. Div. 2003)).  An "unlawful practice" may be an

affirmative act, a knowing omission, or a regulatory violation.  See id.; see also N.J. STAT. ANN.

§ 56:8-2.[18]

### i. Delguercio's Consumer Fraud Act Claim

Defendants argue that the "Delguercio Complaint is devoid of any allegation of a specific

representation or affirmative statement made by VWoA that could serve as the basis for an action

for fraud."  Mot. at 23.  The CFA does not, however, require an affirmative statement or

representation.  A CFA claim may proceed based on allegations of an "unconscionable

commercial practice."  As the New Jersey Supreme Court has noted, "unconscionability is 'an

amorphous concept obviously designed to establish a broad business ethic . . . .'"  Cox v. Sears

Roebuck & Co., 647 A.2d 454, 462 (N.J. 1994) (quoting Kugler v. Romain, 279 A.2d 640, 651

(N.J. 1971)).  Importantly, however, the New Jersey Supreme Court has also noted that "a breach

of warranty, or any breach of contract, is not per se unfair or unconscionable . . . and a breach of

warranty alone does not violate a consumer protection statute."  Id. (quoting D'Ercole Sales, 206

N.J. Super. at 25).  As a result, the New Jersey Supreme Court held that under the CFA, a

plaintiff must allege more that just a breach:

---

[18]      This section reads in relevant part:

The act, use or employment by any person of any unconscionable commercial
practice, deception, fraud, false pretense, false promise, misrepresentation, or the
knowing, concealment, suppression, or omission of any material fact with intent
that others rely upon such concealment, suppression or omission, in connection
with the sale or advertisement of any merchandise . . . is declared to be an
unlawful practice . . . .

N.J. STAT. ANN. § 56:8-2

the law permits that party to recoup remedial damages in an action on the contract; however, by providing that a court should treble those damages and should award attorneys' fees and costs, the Legislature must have intended that substantial aggravating circumstances be present in addition to the breach.

Id.

Neither party has briefed whether Plaintiff Delguercio has adequately pleaded "substantial aggravating circumstances." Because "[a] court adjudicating a CFA claim must approach dismissal of said claim 'with hesitation,'" Parker, 2008 WL 141628 at *2 (quoting New Jersey Citizen Action, 842 A.2d at 176), the Court will deny Defendants' motion to dismiss Plaintiff Delguercio's CFA claim for "unconscionable commercial practices," with leave to Defendant to renew the argument at the summary judgment stage.

### ii. Delguercio's Common Law Fraud Claim

Defendants argue that Delguercio's common law fraud claim should be dismissed under Rule 9(b). In New Jersey, the five elements of common law fraud are "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." See, e.g., Panella v. O'Brien, No. 05-1790, 2006 WL 2466858, *8 (D.N.J. Aug. 24, 2006). Delguercio alleges misrepresentation and knowledge: the Complaint alleges that Defendants "misrepresented that the car was free from defects at the time of purchase although they knew about the defects." See Delguercio Opp. at 17; Compl. ¶¶ 28-29. Plaintiff Delguercio alleges intent generally, see Compl. ¶ 34, which is sufficient under Rule 9(b). Plaintiff alleges reliance only generally, see Compl. ¶¶ 8, 75, but such general allegations of reliance are sufficient in light of the fact that the specific facts as to the misrepresentations are

within Defendants' control, not Plaintiff's.  Defendants do not challenge Plaintiff's allegations of

damage.  Because Plaintiff Delguercio has put "the [D]efendant[s] on notice of the precise

misconduct with which [they are] charged," <u>Strzakowlski v. General Motors Corp.</u>, No. 07-4740,

2005 WL 2001912, *6 (D.N.J. Aug. 16, 2005), the Court will deny Defendants' motion to

dismiss Plaintiff Delguercio's common law fraud claim under Rule 9(b).

### iii. The Dewey Plaintiffs' Consumer Fraud Act Claims

At the outset, it should be noted that there is a serious question whether New Jersey's

Consumer Fraud Act should be applied to non-New Jersey Plaintiffs Dewey and Romeo.

Nevertheless, because neither party has adequately briefed the choice-of-law issue and compared

the relevant state consumer fraud statutes, the Court is unwilling to dismiss Plaintiff Dewey and

Romeo's CFA claim at this time.  The Court will consider the Dewey Plaintiffs' CFA claims

generally, and will entertain a choice-of-law argument from Defendant at the summary judgment

stage, if Defendants wish to make such an argument.

Defendants argue that the Dewey Plaintiffs have insufficiently pleaded "a causal nexus

between the first two elements – defendants' allegedly unlawful behavior and the plaintiff's

ascertainable loss."  <u>Parker v. Howmedica Osteonics Corp.</u>, No. 07-2400, 2008 WL 141628, *2

(D.N.J. Jan. 14, 2008).   In paragraphs 7-9 and 55-65 of their Complaint, the Dewey Plaintiffs

detail Volkswagen's alleged misrepresentations and omissions.  <u>See</u> Dewey Compl. ¶¶ 7-9, 55-

65.  This section of Plaintiffs' Complaint identifies alleged misrepresentations and omissions on

Volkswagen's website, <u>see</u> <u>id.</u> ¶¶ 7, 56-57, and in the owner's manual for the 2002 Passat, <u>see</u> <u>id.</u>

¶¶ 58, 61.  Plaintiffs also allege that "Volkswagen did not fully and truthfully disclose to its

31

customers the true nature of the inherent design defects, which were not readily discoverable until years later, often after the warranty has expired."  Id. ¶  64.

In spite of Rule 9(b)'s strictures, the Dewey Plaintiffs plead a "causal nexus" between the alleged misrepresentations on Volkswagen's website and in the 2002 Passat owner's manual and his injury in only the most general and conclusory terms.  The Plaintiffs allege that "[b]ased on these representations, upon which Plaintiffs relied, . . . Plaintiffs and other members of the Class leased and/or owned a Class Vehicle . . . ."  Id. ¶ 9.  Paragraph 65 of the Complaint alleges that "[t]hese material misstatements and omissions had the cause and effect of inducing cautious consumers into leasing and/or purchasing the Class Vehicles . . . ."  Id. ¶ 65.  Finally, paragraph 99 of the Complaint states that "[t]he Plaintiffs and other Class members justifiably relied upon such misrepresentations, concealment and omissions to their damage and detriment."  Id. ¶ 99.

The above-cited paragraphs of the Dewey Complaint are legal conclusions, not factual allegations that would, if true, establish a "causal nexus."  With regard to the statements on Volkswagen's website and in the 2002 Passat owner's manual, the Dewey Plaintiffs do not allege when the statements were made[19] or at what point – if ever – each Plaintiff was exposed to one or more of the statements.[20]  Without this information, Plaintiffs have not properly plead a "causal nexus" with the particularity required by Rule 9(b).  Further, these facts are uniquely within

---

[19]     For example, in order to demonstrate the required causal nexus, Plaintiffs might be expected to plead facts stating whether the allegedly fraudulent statements on the website were on the website at the time that any of the individual Plaintiffs were deciding whether to purchase a Volkswagen, and whether any of the Plaintiffs saw those statements on Volkswagen's website.

[20]     For example, Plaintiff Dewey is the only Plaintiff who owns a 2002 Passat.  Yet the Dewey Complaint uses broad and conclusory language to suggest that all of the Dewey Plaintiffs relied on the representations made in the 2002 Passat owner's manual.

Plaintiffs' control and discovery will not enable Plaintiffs to allege reliance on these statements with any additional specificity.  Because Plaintiffs have failed to allege with particularity a causal nexus between their injuries and these aspects of Defendants' allegedly unlawful behavior, the Court will grant Defendants' motion to dismiss the Dewey Plaintiffs' CFA claim under Rule 9(b) with regard to the allegedly fraudulent statements "contained in the 'Owner's Literature,' maintenance books, and other marketing materials . . . ." Id. ¶ 9.  The motion shall be granted without prejudice and with leave to the Dewey Plaintiffs to amend the Dewey Complaint accordingly within 10 days of this opinion.

The Dewey Plaintiffs' CFA claim does satisfy Rule 9(b)'s heightened pleading standard, however, with regard to the omission alleged in paragraph 64 of the Dewey Complaint. Defendants do not challenge the sufficiency of the omission alleged in paragraph 64, which states that

> Volkswagen did not fully and truthfully disclose to its customers the true nature of the inherent design defects, which were not readily discoverable until years later, often after the warranty has expired.  As a result, Plaintiffs and the other Class Members were fraudulently induced to lease and or purchase the Class Vehicles with the said design defects and all of the resultant problems . . . .

Dewey Compl. ¶ 64.  Plaintiffs do not mention this alleged omission in either their motion brief, see Mot. at 22-26, or their reply brief, Rep. at 13-14.  Because the allegations in paragraph 64 are based on facts which – unlike those alleged in paragraphs 7-9, 56-58 and 61 – are not within Plaintiffs' control, and because Defendants do not direct their motion to dismiss to the allegations contained in paragraph 64, the Court will deny Defendants' motion to dismiss the Dewey Plaintiffs' CFA claim pursuant to Rule 9(b) as it relates to the allegations contained in paragraph 64.

iv. Dewey Plaintiffs' Common Law Fraud Claims

Defendants also move to dismiss the Dewey Plaintiffs' common law fraud claims for

failure to meet the heightened pleading standards of Rule 9(b).  Defendants' argument concerns

the statements and representations alleged in paragraphs 7-9, 56-58 and 61 of the Dewey

Complaint, which are drawn from Defendants' website and "owner's literature" such as the 2002

Passat owner's manual.  Because the "causal nexus" requirement of the CFA is less stringent

than the "reliance" element of common law fraud, see Fink v. Ricoh Corp., 839 A.2d 942, 955

(N.J. Super. Ct. Law. Div. 2003),[21] the Dewey Plaintiffs' failure to allege a causal nexus under

the CFA also undermines their common law fraud claims to the extent the claims rely on these

affirmative representations and statements.

Although neither Defendants nor Plaintiffs adequately brief the elements of common-law

fraud in each of the relevant states, it is axiomatic that a claim of common-law fraud requires a

sufficient allegation of reliance.  See, e.g., Panella, 2006 WL 2466858 at *8 ("[t]he five elements

of common law fraud [under New Jersey law] are: (1) a material misrepresentation of a presently

existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that

the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting

damages."); Phillips v. Am. Intern. Group, Inc.,  498 F. Supp. 2d 690, 696 (S.D.N.Y. 2007)

("Under New York law, the elements of common law fraud are 'a material, false representation,

an intent to defraud thereby, and reasonable reliance on the representation, causing damage to the

---

[21]      As New Jersey courts have noted, "[t]he causes of action differ, however, in that
common law fraud requires proof of reliance while consumer fraud requires only proof of a
causal nexus between the concealment of the material fact and the loss."  Varacallo v.
Massachusetts Mut. Life Ins. Co., 752 A.2d 807, 814 (N.J. Super. Ct. App. Div. 2000) (citing
Gennari v. Weichert Co. Realtors, 691 A.2d 350 (N.J. 1997)); see also Fink, 839 A.2d at 955.

34

plaintiff.'"); <u>Crowder v. Master Fin., Inc.</u>, 933 A.2d 905, 923 (Md. Ct. Spec. App. 2007) ("The Court of Appeals has set forth the following five elements that a plaintiff must prove by clear and convincing evidence in order to prove a cause of action in tort for fraud or deceit: (1) that the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from that misrepresentation.").

Insofar as their common law fraud claims rely on statements from Volkswagen's website and "owner's literature," the Dewey Plaintiffs offer no additional facts beyond those discussed above in the context of Plaintiffs' CFA claims. The Dewey Complaint does not allege facts – facts which are undisputably within the Plaintiffs' control – to sufficiently plead reliance on the allegedly fraudulent statements "contained in the 'Owner's Literature,' maintenance books, and other marketing materials . . . ." <u>Id.</u> ¶ 9. Defendants motion to dismiss the Dewey Plaintiffs' common law fraud claim under Rule 9(b) shall be granted with respect to the allegations discussed above without prejudice and with leave to the Dewey Plaintiffs to amend their complaint within 10 days of this opinion.

Like Plaintiffs' CFA claim, however, and for the reasons stated in Part III.D.iii, above, the Dewey Plaintiffs' have met the heightened pleading standard of Rule 9(b) with regard to the omission alleged in paragraph 64 of the Dewey Complaint.

*F. Plaintiffs' Unjust Enrichment Claim*

Defendants move to dismiss all Plaintiffs' unjust enrichment claims on grounds that, under all relevant state laws, an unjust enrichment claim may not be brought when a valid contract exists.  See Dewey Compl. ¶¶ 114-18; Delguercio Compl. ¶¶ 67-72; Mot. at 30.  The issue of whether Plaintiffs may simultaneously plead both contractual and quasi-contractual causes of action is governed by Federal Rule of Civil Procedure 8(e)(2).  Under the Federal Rules of Civil Procedure

> [a] party may set forth two or more statements of a claim or defense alternately or hypothetically, either in one count or defense or in separate counts or defenses. When two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements. A party may also state as many separate claims or defenses as the party has regardless of consistency and whether based on legal, equitable, or maritime grounds.

FED. R. CIV. PRO. 8(e)(2).  The state case law upon which Defendants rely is inapposite because state court pleadings are not governed by the standard established by Rule 8(e)(2).  Although it is an "uncontested truth that recovery under quasi-contractual or other equitable claims is precluded in the presence of a valid contract . . . [and] that some of plaintiff's quasi-contractual or other equitable claims may be dismissed as inconsistent at a later time in these proceedings, it is far to[o] early to do so now."  Titan Stone, Tile & Masonry, Inc. v. Hunt Const. Group, Inc., No. 05-3362, 2006 WL 2788369, *5 (D.N.J. Sept. 27, 2006); see also In re Prudential Ins. Co. of Am. Sales Practices Litig., 975 F. Supp. 584, 621-622 (D.N.J. 1996) (same).  The Court will deny as premature Defendants' motion to dismiss Plaintiffs' unjust enrichment claim on this ground at this time.

36

*G. Negligent Misrepresentation*

i. Delguercio's Negligent Representation Claim

Defendants move to dismiss Plaintiff Delguercio's negligent misrepresentation claim on grounds that "the Delguercio Complaint fails to cite even a single statement or representation made by VWoA at any time relating to any vehicle."  See Delguercio Compl. ¶¶ 59-62; Mot. at 32.  Under New Jersey law, "[a] cause of action for negligent misrepresentation may exist when a party negligently provides false information."  Karu v. Feldman, 574 A.2d 420, 425 (N.J. 1990). "[T]o prevail on a negligent misrepresentation claim, a plaintiff must prove that the defendant negligently made an incorrect statement, upon which the plaintiff justifiably relied."  Alexander v. CIGNA Corp., 991 F. Supp. 427, 440 (D.N.J. 1998) (citing H. Rosenblum, Inc. v. Adler, 461 A.2d 138 (N.J. 1983)); see also Stouts-Brunswick Associates Ltd. P'ship v. Bankers Trust Co., 173 Fed. App'x 109, 111 (3d Cir. 2006) (citing Alexander, 991 F. Supp. at 440, for elements of negligent misrepresentation).

Plaintiffs' negligent misrepresentation claim is subject only to the notice pleading standard of Federal Rule of Civil Procedure 8(a).  Paragraph 60 of Plaintiff Delguercio's Complaint states that "VW negligently failed to disclose defects and continuously made negligent misrepresentations regarding defects in the class vehicles to Plaintiff and members of the Plaintiff Class during the sale, lease or servicing of said vehicles."  See Delguercio Br. at 23. Under the standard discussed above, Plaintiff Delguercio's Complaint states a claim for negligent representation in paragraph 60.  The Court will deny Defendants' motion to dismiss Plaintiff Delguercio's claim for negligent misrepresentation.

ii. DeMartino's Negligent Representation Claim

Defendants move to dismiss Plaintiff DeMartino's claim under New Jersey law, arguing that "the allegedly actionable misrepresentations set forth in the Dewey complaint appear(ed) in advertising and other statements directed to the public generally . . . ."  See Mot. at 33; see also Dewey Compl. ¶¶ 102-08.  Defendants argue that the New Jersey Supreme Court precluded such a cause of action in People Exp. Airlines, Inc. v. Consol. Rail Corp., when the court noted that

> a defendant owes a duty of care to take reasonable measures to avoid the risk of causing economic damages, aside from physical injury, to particular plaintiffs or plaintiffs comprising an identifiable class with respect to whom defendant knows or has reason to know are likely to suffer such damages from its conduct.

495 A.2d 107, 116 (N.J. 1985).  As the Court then noted in People Express, however, "[a]n identifiable class of plaintiffs must be particularly foreseeable in terms of the type of persons or entities comprising the class, the certainty or predictability of their presence, the approximate numbers of those in the class, as well as the type of economic expectations disrupted."  People Exp. Airlines, Inc., 495 A.2d at 116.  Because these requirements are met in the case at bar, Defendants' motion to dismiss Plaintiff DeMartino's negligent misrepresentation claim will be denied.

iii. Romeo and Dewey's Negligent Representation Claims

As to non-New Jersey Plaintiffs Romeo and Dewey, Defendants argue that, if Maryland and New York law apply, then Plaintiffs Romeo and Dewey have failed because they have not alleged privity or its functional equivalent.  See Mot. 34-36; see also, Ossining Union Free School Dist. v. Anderson LaRocca Anderson, 539 N.E.2d 91, 94 (N.Y. 1989) ("The long-standing rule is that recovery may be had for pecuniary loss arising from negligent

38

representations where there is actual privity of contract between the parties or a relationship so close as to approach that of privity."); Eurycleia Partners, LP v. Seward & Kissel, LLP, 46 A.D.3d 400, 402 (N.Y. App. Div. Dec. 20, 2007) ("Plaintiffs also fail to allege privity or a relationship 'so close as to approach that of privity' between themselves and S & K so as to state a cause of action for negligent misrepresentation.").

The Court finds that privity is no bar to Plaintiffs' negligent misrepresentation claims. New York and Maryland courts established the privity rule because of the concern that liability without privity or its equivalent may expose entities to liability "in an indeterminate amount for an indeterminate time to an indeterminate class." Ultramares Corporation v. Touche, 174 N.E. 441, 444 (N.Y. 1931) (cited in Ossining Union Free School Dist., 539 N.E.2d at 94). Here, by contrast, "there [i]s no question as in Ultramares, of 'liability in an indeterminate amount for an indeterminate time to an indeterminate class.'" Weisman v. Connors, 540 A.2d 783, 793 (Md. 1988). In other words, given the nature of the relationships at issue, and the ability of the parties to identify the purchasers of Class Vehicles, the concerns present in Ultramares are not present in the case at bar.[22] The Court will deny Defendants' motion to dismiss Plaintiff Dewey's negligent

---

[22]      Defendants suggest that Maryland law requires that "the parties must, at the very least, be known to each other at the time of the alleged misrepresentation." Mot. at 35. Defendants fail to cite a single case that supports this proposition. Rather, Defendants' cases suggest that "be[ing] known to each other" may be a sufficient condition to establish privity, but nowhere do the cases state that it is a necessary one. Cf. Weisman v. Connors, 540 A.2d at 793 ("We think the jury could have found from the evidence that the circumstances under which the two men came together in precontractual negotiations created a sufficiently close nexus or relationship as to impose a duty on Weisman not negligently to make statements of present or past facts about FWC or the new position of executive vice president."); Giant Food, Inc. v. Ice King, Inc., 536 A.2d 1182, 1185 (Md. Ct. Spec. App. 1988) (holding that the parties' "communications that extended over a period of seven months" created an 'intimate nexus' akin to a contractual relationship or its 'equivalent.'").

misrepresentation claim under Maryland law[23] and Plaintiff Romeo's negligent misrepresentation claim under New York law.

### H. Breach of Duty of Good Faith and Fair Dealing

Defendants move to dismiss all Plaintiffs' claims for Breach of Duty of Good Faith and Fair Dealing.  See Dewey Compl. ¶¶ 109-113; Delguercio Compl. ¶¶ 54-58.  Defendants argue that Plaintiff Delguercio's claim fails under New Jersey law because "[s]he does not . . . identify any contractual term which allegedly imposes th[e] obligation [to notify Plaintiff and members of the Class of the alleged defects in the Class vehicles, and to repair the defects and resulting damage] upon VWoA, either expressly or by implication."  Mot. at 36.  In order to state a claim for breach of duty of good faith and fair dealing under New Jersey law, however, there need not be an express contract term imposing the obligation on Defendants.  Rather, "[a]lthough the implied covenant of good faith and fair dealing cannot override an express term in a contract, a party's performance under a contract may breach that implied covenant even though that performance does not violate a pertinent express term."  Wilson v. Amerada Hess Corp., 773 A.2d 1121, 1126 (N.J. 2001).  The implied covenant exists so "that neither party shall do

---

23      Defendants also suggest that Plaintiff Dewey's claim is barred by Maryland's three-year statue of limitations.  See Mot. at 36.  Plaintiff Dewey does not directly refute this argument.  Nevertheless, the sole case cited by Defendants does not, by itself support Defendants' position.  G & M Oil Co. v. Glenfed Fin. Corp. notes that "[u]nder Maryland law '[a] civil action at law [including negligent misrepresentation claims] shall be filed within three years from the date it accrues. . . .'" 782 F. Supp. 1085, 1088 (D. Md. 1991).  The court went on to note, however, that "Maryland courts have stated that a cause of action accrues under its statute of limitations 'when the claimant in fact knew or reasonably should have known of the wrong.'"  Id.  The alleged damage to Dewey's car occurred in July 2006.  See Dewey Compl. ¶ 18.  As a result, there are issues of fact as to when Dewey's cause of action accrued under Maryland law.  The Court will therefore deny Defendants' motion on this ground without prejudice to Defendants' right to renew the argument at a later date.

anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract . . . ."  Id. at 1126.  Plaintiff DeMartino's claim is also adequate under this standard.  See Dewey Br. at 36.

Under New Jersey law, a claim for Breach of Duty of Good Faith and Fair Dealing also requires a showing of "bad motive or intention."  Id. at 1130.  All Plaintiffs satisfy this requirement by alleging malice on the part of Defendants.  See Delguercio Compl. ¶ 57; Dewey Compl. ¶ 112.  Because the New Jersey Plaintiffs have not stated a claim that conflicts with an express term of their contracts, and because both New Jersey Plaintiffs have sufficiently pled bad motive, the Court will deny Defendants' motion to dismiss Plaintiff Delguercio's and Plaintiff DeMartino's Breach of Duty of Good Faith and Fair Dealing claim.

To the extent that Defendants' discuss the duty of good faith and fair dealing under New York and Maryland law, Defendants have failed to demonstrate a conflict between the law of the forum state and the laws of New York and Maryland.  See Mot. at 38-40.  As a result, the Court will apply the law of the forum, and deny Defendants' motion to dismiss Plaintiff Dewey's and Plaintiff Romeo's claim for Breach of Duty of Good Faith and Fair Dealing for the same reasons discussed above.

*I. Improper Repair*

Finally, Plaintiff Delguercio brings a claim for Improper Repair and Breach of Warranty. See Delguercio Compl. 48-53.  "Improper Repair" is not a cause of action.  To the extent that Plaintiff Delguercio's claim for "Improper Repair" sounds in tort, she fails to state a claim, because the duty to repair is contractual, not tort-based.  To the extent that Plaintiff Delguercio's claim is based on the warranty, that claim is duplicative of her express and implied warranty

41

claims in Counts I and II.  As a result, the Court will grant Defendants' Motion to Dismiss Plaintiff Delguercio's claim for Improper Repair and Breach of Warranty for failure to state a claim.

      An appropriate order shall issue.


                     /s/ Faith S. Hochberg             
                    **HON. FAITH S. HOCHBERG, U.S.D.J.**